Good morning, everyone. We have four arguments on today's calendar. We'll begin with four consolidated appeals in cases 23, 2434, 2450, 2479, and 2652. The United States v. Clemon v. Maxwell, Griffin, and Smith. The court is aware with separate counsel for each defendant appellant that you have divided time. We'll be flexible with the clock a little bit because we understand there's quite a bit of choreography to do with four of you arguing, so don't worry about that. I understand we're going to begin with, is it Ms. Kelly? Nice to see you. Good morning, Your Honors. My name is Anise Kelly, and I represent Frank Smith. I'm going to primarily focus on Damian Madison's testimony without waiving any arguments. The trial court abused its discretion when it made conflicting multiple rulings regarding this testimony. The court correctly ruled Madison was not a co-conspirator, but never required the government to ID a co-conspirator. It required trial counsel to object to every inadmissible statement, which trial counsel did, but was overruled. For example, Madison was allowed to testify that he knew about different factions among the G.D. board members and factions within the board because unknown people always talk about board members. He was allowed to answer the question, and tell us what you knew about Frank Smith and what his faction was. Trial counsel, the same objection to his whole line of questioning. The court, I understand, overruled. Question, what did you know about Frank Smith and who his faction was? This is just an imitation to gossip. No foundation by the government, no specificity to any timeline or anything. Were you allowed to cross-examine and make those points in front of the jury? Yes, Your Honor, we did cross-examine and we did try and pin down, but that still doesn't change the fact that the court should never have allowed Madison's testimony, and especially because eventually, on its own, the court stopped the trial to hold the sidebar because it realized Madison was only testifying to hearsay. During that sidebar, basically by that own admission, it recognized that it should not have overruled the trial court's objections. Ms. Kelly, is your position, just so we, I think I understand it because I think you've been clear, your position is that as a categorical matter, Mr. Madison should not have been allowed to take the witness stand and testify as to anything writ large. Is that your position? That he was an improper witness just as a categorical matter? Yes, but then I would also argue sub-categorically that when he did testify, he knew this information about the GDs because he worked security. He never said who was on these phone calls he was on with. He said they were leaders, never named any leaders. It was always other people and unknown people. So what he was testifying to, again, he should not have been allowed to testify, period. But then throughout his testimony, his testimony should not have been allowed to specific things that he was testifying to, specifically relating to Frank Smith. Then, I mean, the court then asked the government in the sidebar to lay a foundation and conditionally admitted the evidence, but that never occurred. And again, the burden was put back on trial counsel. I'm a little bit, I'm just a little bit confused on the sort of the difference between hearsay and an adequate foundation for the testimony. Because some of the statements, they don't seem like hearsay when he's explaining what his understanding of Mike Tyson punch out meant and things like that. He's not, the way I understand the testimony and the transcript is he's not saying so-and-so said to me that, which would clearly be hearsay, right? An out-of-court statement offered for the truth of the matter. But what he's doing instead is just explaining Mike Tyson, a Mike Tyson punch out is. And it, I guess, is your argument that there was no adequate foundation such that his testimony should have been barred even though foundation can go to weight and not admissibility? I guess, you know, it's a combination of foundation, hearsay. In pre-trial when the government, when the court had its hearing, the government tried to pin, I mean, the court tried to pin the government down as to what they were trying to use Madison for. And the government said, there will be some statements by other gangster disciple members that were made to Madison, which we suggest were made in furtherance of a gangster despite disciple conspiracy. The court said, is this 801 D2E? And that was the government's response. So throughout the trial, it was kind of this mix and match. Is it hearsay? Is it foundation? Is the whole thing inappropriate? And the court throughout the trial mixed and matched how it responded to Damian Madison's testimony. And on the Mike Tyson punch out, which the whole case hinges on, there was certainly, he was the only one who said that. Well, so correct my understanding if I'm mistaken on this. Mr. Madison testified that he was a member of the gangster disciples. In Colorado. They have different factions. Okay. In Colorado, that he was aware of how the gangster disciples as, again, as a group, not hung up on the terminology. Because he worked security, whatever that means. Well, okay. But he was aware of how it was also structured. Didn't he offer testimony about how the institution is structured? I apologize. I apologize, Your Honor. I do not recall him saying that. Okay. But certainly the record says that. Well, if he, if he testified, I, from the kind of going to Judge Kirsch's question, if he testifies that I am, and he was subject to cross-examination, they were, I don't know if it was you or Mr., somebody cross-examined him. Right. Correct. That I'm, I'm a member of the organization. I'm aware of how the organization is structured. And I, I can offer testimony about my knowledge of certain phrases or expressions, including Mike Tyson punch out and this and that. Well, he was a member of Colorado and he testified he didn't know anything about Illinois or Missouri, which is where this occurred in. So who knows what Mike Tyson means in Colorado versus what Mike Tyson means in Illinois. Well, that could have been exposed through, through cross-examination, right? In other words, that the Colorado gangster disciples, whoever they are, have nothing to do with the gangster disciples in other parts of the country. You may as well just, that's like comparing an apple and an orange. I mean, that could have been, that could have been a theme of defense. Correct, Your Honor. But I don't think it's appropriate to allow the government to admit inappropriate and inadmissible evidence and then expect defense counsel to clean it up on cross-examination. Well, rest assured, we have some questions about how the 801 D2E testimony was handled here and the government will receive those in a few minutes. Thank you. I see. I have 25 seconds for my rebuttal. No, we'll give you a little bit more. Thank you, Your Honor. You're quite welcome. Mr. Shatnick. Good morning, Your Honor. I am Dan Shatnick. I was the attorney at the trial level and now on appeal for Sean Clement. I plan to focus my argument with regard to the sufficiency of the evidence as explained in my brief. Mr. Clement stands convicted of counts one through six of the superseding indictment. For any of those clowns to stand, Mr. Clements must be guilty of either the murder of Mr. Allen and or the attempted murder of Mr. Warden. This is all based on a shooting event that occurred in Bridgeton Park, or excuse me, Matthews Park in Bridgeton, Missouri. It is our position that the evidence is insufficient to support that and as such that undermines his convictions in all counts. My client is currently serving a life sentence in the Bureau of Prisons based primarily on an event that lasted about two or three minutes in terms of the shooting event at the park. The evidence that was produced at trial of witnesses to the event were basically three people. The first was a gentleman by the name of Chad Milton whose testimony really didn't do anything for either side. The second was Mr. Blount, Christopher Blount. While he provided background testimony, he also did not provide any testimony as to the actual shooting event. He was either away or looking away. It came down that the government's entire case with regard to the details of what happened during the shooting event came down to Mr. Perry Harris. Mr. Harris was originally a co-defendant with us in the case. As we neared trial, he then became a cooperator with the government. He provided testimony at trial that he was looking at a sentence of between 24 to 27 years in prison based upon his plea. While it was not a part of our record and was not available to us at the time of sentencing, he wound up getting a time-served sentence of 28 months. Even with that great incentive to provide testimony to the government, the testimony that he provided on the sequence of events with regard to the shooting was insufficient to form a basis for a murder conviction or an attempt murder conviction with regard to my client. There is discussion as to that Mike Tyson event. Is it my right that Mr. Harris, just correct me if I'm wrong, there's a lot of evidence here and you all know, Mr. Harris testified that he was present, correct? Yes, sir. At Matthews Park? Yes, sir. And after, oh boy, Deshaun Wharton showed up at the park uninvited to this gathering that they were going to have to sort out who was in charge of the Missouri faction or whatever the right way to say that is, there was a punch thrown or Mr. Wharton was hit in the head or and then a gunfight broke out. Mr. Harris was present for all of that? That is correct. And did he, he testified, did he not, as to what he observed and who else was present and what roles they played? Yes. Okay. So his testimony was really the only eyewitness testimony as to the sequence of events with regard to the shooting. And so he discusses both the phone conversation with Frank Smith and Mr. Maxwell, where this Mike Tyson statement was made. And then he discusses the fact that he sees the hit by Mr. Maxwell to Mr. Wharton and then the sequence of events. So first off the government's position in their brief is that my client formed a requisite intent with regard to murder or attempt murder by basically being present during a phone call where these words were uttered by Frank Smith over the phone, over the Mike Tyson punch out. No one knew that Mr. Wharton was going to show up. When he showed up, he was wearing a bulletproof vest and was clearly armed. He brought an entourage with him who was also armed. In terms of the sequence of events with regards to the shooting, you basically had the punch happen and then you had Mr. Wharton basically make eye contact with Mr. Johnson, who was one of his security people who was armed. Mr. Johnson goes behind a tree and begins open firing on the area where Mr. Maxwell was, Mr. Harris, and my client, Mr. Clement. At the point in time that he begins firing on this group, my client has not pulled out a gun. Mr. Harris was only in the process of pulling out his gun when the shooting is going on and Mr. Harris's testimony is that Mr. Clement didn't pull a gun out until after Mr. Harris had. So basically my client is standing there, this event occurs, everybody's pulling out guns but not him yet, shooting begins but not him yet, and then when the shooting happens over a flurry of two minutes where there is evidence of at least 12 different guns being fired and Mr. Harris was of course the person who fired the most shots. When this happens, my client was basically presented with a situation where regardless of what happened between Mr. Wharton and Mr. Maxwell, he's got Mr. Johnson shooting at the area where he is. The government's position is that he cannot defend himself because of the action interactions took place between Mr. Maxwell and Mr. Wharton, but my client has done nothing other than stand there when this event takes place, when the shooting starts, when everybody else is shooting, and then he pulls out a gun and their theory is that somehow this is the requisite intent for a murder and an attempt murder where he did nothing, he did not tell anybody to do anything, he did not say anything with regard to this punch out event, he didn't tell anyone to do any violence, he didn't do any violence, he didn't direct anybody, he's just standing there and then this all happens around him, bullets are flying, and he pulls his gun apparently from what Mr. Harris said of everybody, he's the last one to pull a gun out and somehow he has formed the requisite intent for murder. You know this is, I don't, it's not the exact words of course, but this is closely aligned with the theme of defense that you presented to the jury, correct? It is, which the jury rejected. No, I know, and you're candid in your brief about the standard of review. Can I ask you, we're just going to go over a little bit here, can I ask you a question about the, is the meeting that preceded the Matthew Park, Matthew's Park event at the, it's at a Starbucks, right, that Mr. Griffin? Some fast present for that? Yes. Okay, and was that meeting about sorting out who's going to be in charge of the Missouri chapter? I think that was a topic of perhaps many topics, but there were statements made at that time about that issue, yes. And the thought among the fellows that attended that meeting was that Mr. Blount was going to be put in charge of the Missouri chapter? Correct, and that Mr. Wharton was out. Mr. Wharton was previously the governor? Yes. Of Missouri? Yes. Okay. We'll give you some rebuttal time. Okay, thank you. You're welcome. Okay, Mr. Bailey, nice to see you. Good morning, all. Good morning. My name is Bobby Bailey, and I'm here to present the argument with regards to Mr. Dominic Maxwell. We contend with regards to this case that the district court error in not dismissing the veneer panel number two, or in the alternative, non-granting a mixed trial based on improper comments that was made during jury selection. In jury selection, there was a retired Illinois state correctional officer. He was retired. He made statements in front of the whole panel that he know of the gangster disciples and the fact that they had put out several hits on him. We asked the court to remove that particular jury from the panel, and the court did. But the effect of his statements on the rest of the panel is the issue here. Four of the individuals from that panel made it to the alternate panel, and it's those four that we believe that may have had a bias or prejudice against our client. Mr. Bailey, can I ask you a question? Was there ever any indication that ... I forgot it was a prospective two. Seventy-four. Seventy-four. Was there any indication that he knew any of the four defendants? No. Because there's not ... I mean, it really wasn't your defense at trial that the gangster disciples are not involved in violence, right? Correct. So really, all he said is in his prior capacity as a state trooper, gangster disciples had put out hits on him. What is sort of shocking about or surprising about that? I mean, it's not as if the jury ... It's not as if the case was about whether the gangster disciples was a violent or involved in violence. Correct. I'm just trying to get you to focus on what the statement had to do with the four defendants that were sitting at the table. Well, I think the statement had a lot to do with the four defendants that are sitting at the table. Number one, impliedly, he was pointing towards the defendant as part of a group that is violent. And if we're in jury selection and we're trying to pick an impartial jury selection, then those words, those comments may affect their thinking. And if four of the- Well, I would agree with you if you had presented a theory to the jury that the gangster disciples were not violent. But it sounds like that wasn't the defense theory. No, that wasn't the defense theory. However, whether or not the gangster disciples were violent or not, I don't think it's the core issue here, is how his comments affected the other jurors to determine whether or not they could be fair in the ultimate determination of this case. And- If we agree for purposes of argument that prospective juror 74 statements were problematic along the line that, you know, if we just- If we move past the important discussion that you just had with Judge Kirsch there and you just say, okay, I'll give you that. What fault do you find with the way the district court handled this? Because the district court obviously was aware of what number 74 said. And then the district court took some measures to address it, including down to like the individual juror level. And then I'm also mindful, didn't Mr. Smith's trial counsel also ask for kind of another round of diligence on this issue? He asked one question. Correct. So when you look at the totality of that, what's the legal or the deficiency with the way the district judge handled it? Well, I think the district judge should have went further into this process. Number one, I believe that the district judge should probably had an individualized board dialogue with each individual to determine if there was prejudice. But more importantly, the court set up a system where it would bring in four different panels on different days to avoid such incidents as what we are hearing about. And it was the panel number two that the statement was made. I believe and I contend that the district court should have just got rid of that whole panel and then started fresh with panel number three. Because as it turned out, we had to end up getting all our jurors from panel number two, which now we're in this predicament that we're in today. If we would have got rid of that whole panel and we would have moved to panel number three, we may not be here today talking about this particular issue. That's my statement. Okay. You have some remaining time on rebuttal if you choose to use it. Well, and the government contends that on the Mack versus Stewart case that this particular case was different than Mack and Stewart. We believe that this case is exactly like the Mack case. And in the Mack case, the appellate court, and I believe that was the Ninth Circuit if I'm not mistaken, indicated that the court should have went further in the board dialogue. And because the court didn't go further in the board dialogue, it reversed the case and sent it back. We're asking that this court look at it from that matter too and reverse it and send it back. Okay. Very well. Okay. We have counsel for Mr. Griffin, correct? May I please report, counsel? I represent Warren Griffin. I'm going to address two issues, the hearsay and the junk science regarding the phone. We'll start with the hearsay. I'm happy to switch up as the court needs. Cross-examination cannot cure every error. In the hearsay issue, there was no ability to cross-examine any of the statements, the documents, the letters, the videos, the wire phone calls. We've joined in Mr. Madison's, the argument about Mr. Madison, but Mr. Madison did testify, unlike all of these other statements that came in. The government's brief fails to identify the issue, which is at the inception of this, as to why the court didn't have a Santiago hearing. Yeah. I got to tell you, I have a lot of sympathy with your position on this. I don't understand for the life of me why there wasn't a Santiago proffer. I want to begin by asking you, what's the practice in your ... I mean, this is what you do. What's the practice in your district on this? There wasn't one here, but are they ... It wasn't. Judge, I have some opinions and some speculation in this case having to do with a confluence of circumstances, which was the reality. The DOJ came in and prosecuted this. Judge Dugan, who I like very much, was new-ish to the bench. As opposed to the local, like a local assistant? Yes. Okay. I think, and this is just speculation, that it was a combination at the time of perhaps the court's reliance on expertise from the DOJ that they would be limiting their case. The pretrial motion hearing that we had, we filed a motion. We asked for a Santiago hearing. The focus was on the idea that if there could be the conspiracy. The second part of that, though, is whether it's in furtherance thereof, not just is there a general conspiracy. As the court knows, there's cases where like, do you have an open court hearing? Is it an in-camera review? Are you going to present the documents? And so, I don't know. What's your experience in other cases? Are Santiago proffers part of the custom and practice in your district? So, Mr. Shatnick probably could speak in terms of the last really big case that we had was a death penalty case some time ago with an Aryan Brotherhood issue. I mean, we're a small district. We don't get that many vast conspiracy cases. People plead guilty. There just aren't a lot of those that happen. Were there statements to which witnesses testified that were not turned over in discovery? Were there statements to which the witnesses testified to? Yeah. Here's the issue. The Santiago proffer in this case is weird because the judge has to make conditional findings that the hearsay is admissible as co-conspirator statements. Without a Santiago proffer, I don't know what the judge could base those conditional findings on. However, at the end of the trial, it doesn't matter anymore as long as the statements were in fact co-conspirator hearsay. Does that make sense? It's a different issue if you were unaware of the witness's testimony. Usually, a Santiago proffer is just cut and paste of statements that are turned over in discovery, but the Santiago proffer is filed for the judge so the judge can make the conditional findings. There's two parts though. There's not just the conspiracy. There's also the in furtherance part. That's why the judge has to look at the statements. Right. I'm saying after the trial, those problems all disappear because if the statements were in fact out of court statements in furtherance of the conspiracy, they're admissible, period. Whether the judge made the right or wrong conditional finding at the beginning of the trial doesn't matter because at the end of the trial, it makes sense. The judge conditionally admits a statement at the end of the trial that the judge is doing it right. He would say, all the statements that I conditionally admitted are now admitted for the truth because I find the government has established the conspiracy and that the statements were in furtherance of the conspiracy, they don't matter. I looked through the briefs and I'm trying to find out what statements were admitted that were not in furtherance of the conspiracy that mattered, that were prejudicial at the end of the trial. Remember, we're a court of review. I understand. There were statements that were not in furtherance of the conspiracy that did matter. That's a separate element in terms of you're talking about was it relevant or was it prejudicial or all of those kinds of things, but there's this bulk of evidence that they just put in as junk. All of this stuff, they put in a letter from Anthony Dobbins, who's this guy who's locked up in the ADX that wasn't even mailed, that Mr. Griffin didn't even get as a statement in furtherance of the conspiracy that has just random chit chat in there about all kinds of things. It was not narrowly tailored. And so whether or not the government can tie up at the end if it's in a conspiracy, but the statements still have to be in furtherance thereof. Otherwise, it's just prejudicial when you just give the jury all of this stuff. They can't sort through it, which is why- The difficulty that this case presents is that the points that you're making about the value that comes from some kind of pretrial process around co-conspirator statements, if you want to call the Santiago proffer, just label it that way, are very well founded in a case like this because what happens is you get exactly to what Judge Kirsch is observing, that we now, as a court of review, we're looking at your client who's convicted that has an extremely serious sentence. And there's a lot of co-conspirator testimony that came in, but yet as a legal matter, we know the harmless error doctrine applies. It just does as a matter of law. And so we're trying to look at this and figure out there are entire categories of testimony that come in. Mr. Dobbins is a good example. There's a lot, but I, but at the same time, I think to myself with respect to Mr. Dobbins, well, Mr. Dobbins is not, Mr. Dobbins is a member of the gangster disciples. There is no question in the evidence that there is a relationship that is established as an evidentiary matter between the two men, Mr. Griffin and Mr. Dobbins. Mr. Dobbins eventually is released from prison you know, they, they end up all caught up in this situation in Chicago with you know, the murder that happens in Chicago that way. So I sympathize with the, with the predicament you're in. I don't think you should be in that predicament that way, but now that you are, what statements beyond the, beyond the category level would, would suggest that there's prejudicial reversible error? Because otherwise we can't do it at the category level is the problem. Sure. And so when you have a hundred statements, right. With no cross-examination about gangster disciples or gangster disciple business stuff in Georgia, this one with Mims and McDonald, all of these, when you stack those on top of each other, how can you have confidence in the verdict that it isn't prejudicial? It has to be narrowly tailored. There have to be some limits to this. The court sort of asking me sort of what the trial judge did, parse out each one of these and tell me how each one of it was prejudicial, right? To your credit, I mean, you tried. Well, the accumulation of this, right, is a problem. If the government had such a good case, right? You're going to put on your DNA. You're going to put on your gang guy. You're going to do this, right? You're going to establish Mr. Griffin was a member of the gangster disciple. Why do you need to do this? Why do you need to do it like that? It's because they don't have a good case, right? They use this mess of gangster disciple evilness, craziness, whatever it is, right, to put layer and layer and layer. Why are they introducing letters from years before? Well, it's because, I mean, I can answer that question. That's because it's a historical case. You know that. I mean, that's how they charge and prove historical cases. They don't have DNA evidence. They don't have fingerprints. I mean, what you're suggesting is if they weren't permitted to do this, you could never charge a historical homicide. That's just flat out wrong. That's how they do it. And I understand that the trial was a little bit of a mess here, but that's why they did it and they're permitted to do it. And the jury is permitted to make findings based on the credibility of witnesses. It doesn't make it, you don't have, there's no four witness rule. If the jury believes the that's it. They didn't come in. These people did not come in and testify. Yeah. You have, you have some added challenges though. Okay. Um, and you look, you're doing the best you possibly can, but Mr. Griffin's DNA is found at the scene of the Ernest Wilson murder. Even if you're right on the particular, some of the highly specific arguments you're making about kind of the particular cell site location testimony that agent caddy or Katie offered. Okay. Some of the more generalized cell site information showing the movement of the phones up and down state that probably come properly came in. So, so it's, it, Mr. Griffin has dealt you a hard hand with those aspects of the evidence. I can talk at length about DNA, the DNA in this case, right? Which you can read all the cross-examination. If you, the DNA in this case wasn't that good, right? And their expert testified in terms of the manner in which it was found, the number of loci, right? That's a weight issue for the jury, but it's not a hundred percent. They didn't run the whole strand and they didn't have a complete match. So it's when you start talking about prejudice, right? You have DNA, right? Whatever weight you're going to give that you have a cell phone expert that based on his testimony, I could be a cell phone expert. I've read the stuff. I've talked to engineers. I've had these guys on the stand a bunch. He doesn't even know how he gets this. He puts it into some software and which is why we included the pictures in the brief. You can see your eye goes right to those little knees, right? And so he adjusts based on what the government told him was an important site. He adjusts the length of the lines. If they had wanted to put into this case, cell phone tower, cell phone tower, cell phone tower, without those little Vs, I don't know what I would be saying here. But what he testified to in terms of his methodology was more specific than that. And it's junk science. It is eyeball junk science. He doesn't know which asthmus the thing was pointing to. He doesn't know whether it was working or not. And so they're going to stick these little tiny things, this halfway DNA, this junk science, and then what they're going to put on top of all of that is all of this hearsay, right? All of it. There's a difference between they want to establish that Mr. Griffin is a member of the gangster disciples and they want to put in the videotape from their CI where he's talking about this. Fine, right? But all of the letters, all of the videotapes, and I'm talking about the prejudice from Mr. Griffin's point, which everybody's joined, right? There's significant prejudice to these other defendants as well. In terms of it's, they want to say that every single person in the gangster disciples is part of this conspiracy. Therefore, every single statement is in furtherance of the conspiracy. So because Aaron Rogers makes some statement, the whole NFL gets it, like it's just not that way. They have to limit it. There has to be some limits to it. There have to be, you can't separate it out from the prejudice. Okay. We're going to give you some rebuttal time. Thank you. You're quite welcome. Okay. Let's hear from the government. Okay. May it please the court, Tyler Lee for the United States. Before getting to hear say, I want to briefly address Clemens sufficiency argument. The jury was entitled to credit Perry Harris's direct eyewitness testimony about the shooting at Matthews park. He testified that Maxwell hit Wharton in the head, that Maxwell and Clemens both pulled out guns and that quote, everybody started shooting then Clemens guilt is also evidenced by his statement that he made after the shooting on the drive home when he was complaining that the bullets bounced off of Wharton and that if he had known it would have gone like that, he would have just walked up and shot Wharton in the head. So that also reflects Clemens intent in that matter. Clemens noted that Maxwell is the one that instigated the violence by hitting Wharton and that's correct. But Clemens, I would note that Clemens didn't try to stop the violence. Clemens heard Smith's order on the phone. And again, viewing the evidence in the light, most favorable to the government as this court does on sufficiency review, a jury could infer his guilt. As your honor mentioned, he also attended the Starbucks meeting where Griffin had announced Wharton's removal as governor and Smith and Griffin had also been circulating this text message that's in evidence that Wharton was an enemy of the organization. Unless there are further questions on sufficiency, I will turn to the hearsay issue in this case. And I can start with the general principles or with Matt specific Madison's testimony. I read the government's I'll tell you, I'm at a, I'm at a complete loss to understand the government did not. And why the government, um, objected to a Santiago proffer here. I, I, you gotta help me with that. You, there's a filing that the government made on this makes very little sense to me. Um, why the Santiago proffer wouldn't have been embraced by the government in a case like this. And it's not, it's not just that it's not embraced. It's actually affirmatively resisted. I don't get that. Your honor. I can't speak to the specific rationale of the trial attorneys in this case. I think that this court has not said, has never said that a Santiago hearing must be conducted. You know, it's up to the, it's up to the district court's discretion. No, but for the reasons that, that have been elicited in some of judge curse's questioning, some of my, this is a case where ex ante before trial, the government is well aware that there's a substantial amount of co-conspirator testimony. And if there, forget the label Santiago proffer, call it what you want. If there's not some pretrial diligence around the co-conspirator testimony, you inevitably end up exactly where we are right now and where we are right now. This is not about benefiting the court of appeals, right? You have four individuals here that have been sentenced to prison for the remainder of their lives. And we're trying to figure out from this record whether there is any prejudicial error with respect to the admission of these statements. And without any pretrial diligence, it is a tremendous mess that is before us to try to sort through this. And you heard from Mr. Griffin's counsel, the, the difficulty of now coming in when you have hundreds and hundreds of statements, maybe thousands of statements to try to pluck out one or two or three and focus our attention on that. The whole point of our, our decision in Santiago was to try to inject some mechanism to get this sorted out pretrial. And as judge Kirsch's questions were revealing, get it connected at for everyone's benefit, for the government's benefit, for the defendant's benefit, for the district court benefit, benefit, and if necessary, for the benefit of a court of review. I don't understand this at all. I understand that concern, your honor. I appreciate that concern. And I agree that in hindsight, this was not the most ideal procedure for the district court to adopt, but the district court, again, has wide discretion in how it can handle these procedures. And I think one of the concerns with having a Santiago hearing, and maybe one of the reasons the district court here did what it did is that it is in part because of the volume of the statements that's, that cuts both ways and that there would have been essentially a whole entire trial before the trial to determine whether these statements could even. Well, that's, that's not right. Okay. That's not right in the seventh circuit. There doesn't need to be a hearing. There's a filing. Okay. The judge can read the filing and make conditional findings, but what in the record did judge Dugan make his conditional findings upon? In other words, you know, co-conspirator hearsay only comes in if there's a conspiracy. So how did judge Dugan, before he conditionally admitted the co-conspirator hearsay statements, what in the record did he make the conditional finding based upon? Well, for each statement that was introduced, there was evidence presented that the speaker was a gangster disciple. So for example, in the letters from Anthony Dobbins. Are you saying the whole gangster disciples are a conspiracy? Was that the government's theory? I mean, the RICO charge is different, but as far as the conspiracy, all the gangster disciples entered into an agreement here to commit these acts? We think the district court did not abuse its discretion in admitting statements and furtherance of an overarching gangster disciples joint venture, which to be clear, differs from conspiracy to commit a crime. Right. The joint venture can be whatever you say it is. There doesn't have to be an agreement, I don't think, to be a joint venture, right? There has to be. A RICO joint venture. For the joint venture for 801 D2E purposes, there has to be a unity of interest among the members of the joint venture. And we think there is sufficient evidence here to show that the gangster disciples was this joint venture with unity of interest, much like the mafia families in the. But it can't be the government's position that any gangster disciple could testify to any subject within the sort of large realm of the gangster disciples. And that would be admissible evidence in any particular trial alleging any act committed by a gangster disciple in furtherance of gang activity. No, not necessarily, Your Honor. And that would be bound by the three requirements of Rule 801 D2E itself, the joint venture that the defendant and the declarant were members and that it was in furtherance, but also by relevance of Rule 401. So if a gangster disciple in California is discussing some gangster disciples going on here, that probably wouldn't. Well, depending again, depending on the context, it may not be relevant for this particular case. So I'm with you there, but that's where my question is. The whole purpose of the Santiago proffer is to provide the judge some context in which to make those decisions. Otherwise, the judge is just sitting there, I suppose, listening to the opening statements. Criminal cases are far different than civil cases. There's no summary judgment. The judge sits at the bench. He may be hearing the evidence for the first time, just like the jurors are. And so is he making decisions based upon the opening statements of the lawyers? Does that make sense? I mean, go back to the first hearsay statement that's admitted, objection hearsay. Judge is not hearsay. It's a statement in furtherance of conspiracy. What's the judge supposed to do? Upon what does the judge say overruled? That's my question. I would have to double check exactly how the, what the order of witnesses at trial, but I believe the first statements that were introduced were those by Dobbins. And there had, again, been some evidence at that point of Dobbins' participation. But even if the district court... I'm with you. I'm with you. I know where you're going there. But that is, for me, that's just, I have trouble with this because clearly everything can be fixed at the end of trial. The government, but I mean, it's just, I don't know. It just seems everything can be fixed at the end of trial because at the end of the trial, the judge can say, well, the government did a good job and they did their job. And the statements they admitted after all, all happened to be admissible co-conspirator hearsay, but it puts the defendants in a difficult position. Well, Your Honor, I think as you pointed out earlier, defendants did have access to all of these exhibits before trial. So the district court repeatedly tried to request that defense counsel identify specific hearsay statements to which they were objecting, and that proved to be difficult. And so the court decided that the procedure that it employed was necessary as it explained in its written post-trial order in which it addressed all the statements. That's all after the fact is the problem. It's all after the fact. What the... I think it might have been, it might have been the federal, it might have been this freighter that filed the motion for the Santiago proffer. I don't want to assign that to her, but somebody did. And then they all joined it that way. And the district court just said, no, I'm going to conditionally admit it all. And then there's this docket entry, number 805, that's part of a case management order that puts us in the position that we're in today in that it moved it all to kind of post-trial. It's the point you're going to, that's all you have to work with. You're going to, well, it all came in conditionally. There's no categorical error in allowing it to come in conditionally. So now the defendants bear the burden of identifying what statements were prejudicial. And I got to tell you, as a court of review here, trying to figure this out from this record, the government's the proponent of the evidence that we're talking about, correct? Yes. I mean, the defendants aren't offering the co-conspirator testimony. It's the government that's offering it. Correct. But the government is effectively relieved of the obligations that 801D2E impose upon the proponent of the evidence by virtue of the procedure that was followed here. Because Judge Kirsch is saying, where's the finding? Well, again, the finding was made in this post-trial order based on the evidence that the government elicited at trial. But there's objections all along the way. There's a request to deal with it pre-trial. The government's filing number 545 in the case, I got to tell you, it makes very little sense to me. The resistance of the Santiago proffer, there's no reasons given. It just says, well, you don't have to do it. Again, it's within the district court's discretion. The district court explained in its order that the procedure employed was given the number of the exhibits and, importantly, the need to manage the juror's time in this length of trial. So rather than— That is even actually a bigger problem, okay, to me. I mean, what I've seen done before, I've seen charts with hundreds of statements listed on the charts that the government prepares, turns them over to the defendant, and the defendant raises objections pre-trial to the specific statements, and then the judge rules upon them. The whole point is to preserve the government's time. And I think what the defendant's complaining, you know, it'd take me about three minutes to paint this wall white. You know how long it would take you to get the white paint off the wall? That's the problem the defendants have. The government puts a witness on the stand and puts seven minutes of testimony on it, and it may take the defendant nine hours to undo what the government just did. That's why judges require proper foundations. That's why they make conditional findings, because it's extraordinarily prejudicial to a defendant to have to clean up what the government did. I mean, the foundation—you know, I ask my questions about foundation, and clearly that goes to weight. But you have a defendant who's extremely prejudicial if every—all right, who said what to who? At what date? Where were you? Who overheard it? You know, every question regarding every statement, the jury would be there for six months. I understand, Your Honor, but at the end of the day, the defendants here still haven't identified what, if any, statements actually were prejudicial in this case. I mean, Mr. Griffin has talked about random chitchat, but random chitchat is not prejudicial. That's—many of the statements here is the government— Well, let's just take one, okay, because otherwise we're just going to talk past each other. So go to the example that was given about the handwritten letter that Mr. Dobbins wrote while incarcerated, so pre-release, to Mr. Griffin. It never made its way to Mr. Griffin because it was intercepted by the law enforcement authorities. Right? So it's definitely—I think there's a—the government has a pretty good case that there is a conspiracy that exists between Mr. Griffin and Mr. Dobbins that way, but that particular statement, if you want to isolate that particular statement— how's that a co-conspirator statement? Your Honor, I'm not—I don't recall, unfortunately, precisely what is the statement. So that's the problem is that it can't—our argument, right, is limited to an hour because I think what Ms. Frater would do is say, well, let's all order dinner in. I'll go over 100 statements with you. That's the predicament that all of this has put Mr. Griffin in. And that's what should have happened pre-trial. I mean, seriously, the government should have prepared a chart and the defendant could have raised objections to 100 out of the 400 statements and the judge goes through each one and says, I'm going to conditionally admit 95 of these 100 statements. The other five, government don't put them in. I understand, Your Honor. I think with respect to Dobbins specifically, as Your Honor suggested, the evidence overwhelmingly showed that he and Griffin were conspirators in the charged conspiracy in addition to a broader joint venture. So any statements that came in by him were not inadmissible under Rule 801. And with respect to the other specific statements identified by Griffin, they generally concern brief references by other gangster disciples to Griffin's nickname and role. And even if those statements were improperly admitted, any error was harmless given the rest of the evidence. With respect to Madison specifically, Madison testified about his experience as a high-ranking gangster disciple, a governor. And so in his role as governor and as security, he had interactions with the leadership and board members. He testified about the structured leadership policies and practices of the gang. And he testified about how he attended these national... Damian Madison. Damian Madison, yes, Your Honor. Testified about how he attended these national leadership events and where they tried to reconcile their differences involving this faction split. So his testimony was properly admitted and based on his personal knowledge and the defense could challenge that on cross-examination as far as the foundation went. Can I ask you a bit of a technical question? Yes, Your Honor. Okay. This is going to the murder of Leroy Allen, okay, in Matthews Park in Missouri in April of 2018. Mr. Smith, through this telephone conversation, orders this Mike Tyson beatdown of Deshaun Wharton. And then we know that Mr. Allen ends up shot and killed, and Mr. Wharton is shot, okay. Should we count the death of Leroy Allen and the injury to Deshaun Wharton as one predicate act or more than one predicate act? In other words, as two predicate acts. I think this court can consider them as two. Again, the element is through a pattern of racketeering activity, which involves at least two predicate acts. The jury instruction said that they could be a type or types such that you could have two murders count as two predicates, for instance. But I think that Wharton and Allen being different individuals supports... Is that because even though they occur within the context of this one event, if you will, at Matthews Park, that they are nonetheless discrete acts of violence kind of within the bubble of that one event? Correct, Your Honor. That would be the legal rationale for that in your view? I think so. That typically a murder... They were charged separately for the Vicar counts as well as an attempted murder of Wharton and the Vicar murder of Allen. So because they have different victims, they can constitute separate crimes, in other words. Yeah. Do you have... We were looking for this and you have any recollection of how the government presented this to the jury? The government's arguments aren't evidence. I know that. But did the government argue or present this that they were two predicate acts? I don't know. I don't remember specifically the government's closing. I don't think it got that granular. I think the government talked generally about the pattern of racketeering activity and highlighted a bunch of different events. The other table might be able to help on this. There were a few folks that participated in the trial there. Okay. But I think even if this court were to construe them as one predicate, there was still sufficient evidence of other RICO predicates for all... Agreement in the commission of other RICO predicates for all three defendants who on appeal are challenging their RICO conspiracy convictions. So for instance, Clemon, there was also very strong evidence of the witness tampering with respect to Perry Harris, where Clemon repeatedly told Perry Harris that he couldn't leave the gang because he knew too much and Clemon would kill him. I'm going to briefly address the prospective juror issue raised by Defendant Maxwell. The district court did not abuse its discretion here in handling the comments made by juror... The comment made by prospective juror number 74. The court questioned the remaining veneer members and confirmed their ability to remain impartial. And under this court's precedent, the court should credit those responses. I'd also briefly like to address the cell site evidence with respect to Griffin. The district court did not abuse its discretion in allowing evidence of that historical cell site information, location information. This court recognized in Hill that the science behind cell site analysis is well understood. So Griffin's challenges really go to weight, not admissibility. Agent Katie sufficiently qualified the limits of his testimony pursuant to this court's decision in Hill. He testified at trial that the sector arms of the V do not reflect the exact coverage of that particular sector. He testified that you can't tell specifically where the cell phone is actually located. And that was this court's concern in Hill and his testimony comported with that. Unless this court has further questions. We would rest on the arguments presented in our briefs. Okay. Hearing none, Ms. Lee, thank you very much. Thank you. Appreciate it. We ask this court to affirm. Okay. We promised each of you rebuttal time and we're going to give it to you. Thank you, Your Honor. I'll be quick. First, I would like to say I thought I heard the government say in response to the court's question about are all GDs in the conspiracy. The answer was, you know, a GD in another state like California would not be relevant to this state. I think that goes exactly to the Damian Madison issue. And I also would like to clarify that Damian Madison was not a high ranking member. He was not a governor. He worked security. And certainly the Mike Tyson comment is, in my opinion, the definition of a prejudicial statement. While technically it's not hearsay, it's his opinion. But he should not have been allowed to even offer such an opinion, given the fact that he was from Colorado and had nothing to do with Illinois and Missouri. And the court pretrial said Damian Madison was not a co-conspirator. And that whole conversation the court said about, you know, OK, but we'll analogize it to a corporation and he's an agent, which I think also goes to the whole question of are all GDs allowed to testify in any trial? That goes to Damian Madison. Certainly our position is Damian Madison was looking to say anything that would get him a shorter sentence and to provide substantial assistance. So we would ask the court to vacate. Thank you, Your Honors. You're quite welcome. Thanks to you, Mr. Shatnick. I don't believe the government broke it down into two different predicate acts, but I can't tell you with certainty with regard to the argument. I don't believe they did, but I can't. I won't swear to it. OK, you want to offer any perspective on your view of the kind of legal question? Our view is that he's not guilty of either. No, yeah, the overarching. And if he gets tagged with one or the other, it's still going to be a predicate act. I believe it's a single event, the shooting event. With regard to, I wanted to talk very briefly about the juror issue. The problem with what this juror said is that it goes beyond, I mean, what he basically is saying is, look, I'm an employee for the Illinois Department of Corrections. As an employee, I deal with prison gangs. One of those prison gangs is the Gangster Disciples. Not only does he say that the Gangster Disciples is a violent group in what his comment says, but he also says, he goes beyond that and says, that is the group with the power and the ability to sophisticatedly execute hits. And the whole government theory against my client is that the Matthews Park event was a hit. And so that made this particular statement by this jury damning. And as the evidence progressed with the government, it just kind of looped into that. So we have a guy that basically makes a statement. The judge looked at it and basically said, this was unsolicited. The judge knew what this guy was doing. This guy went out of his way to basically crap on this situation. And the judge took him out, sui sponte. We didn't even get a chance to have the judges. I'm just taking him out. But when he put this out as a hit, and then the theory of the government here was a hit, that's what made this so prejudicial against, at least with regard to the gentleman, with regard to anybody, with regard to the Matthew Parks. Because that tied it in and had all these prospective jurors here. This is an organization that is sophisticated enough and organized enough to do hits. And there's nothing we can do about it other than make an objection to this guy. That was my added comment to that. With regard to the government's discussion of Mr. Clements, throughout the briefing process, the government has ignored the timing and the sequence of the events in terms of who did what in terms of my client. And they have, in their briefing and in today, have disregarded the actual sequence of the events that were involved in the shooting in terms of- Within the park when it all went down. Right, in terms of who's pulling out a gun. And basically, their pitch today, as in their pitch in their brief, was that Maxwell smacks this guy and that my guy and Maxwell then pull out guns and start shooting. And that is a gross oversimplification and it does not address what really happened. They did it in the brief and they didn't address anything about the details of it today. They've been consistent and they have never discussed that particular aspect. In terms of saying, well, after the fact, this shows what Mr. Clements' statement was in terms of if I had known how that's going to go, I would have shot him. Well, Mr. Clements is just driving back from an event where he's standing there and he sees assassin, Mr. Deshaun Wharton, give a signal to his hitman to start shooting at my guy. And so, yeah, he's a little irritated about that when he's driving back, but that is not evidence of intent. That's, you know, if I'd have known that he was going to try to kill me, sure, I would have done it, but that has nothing to do with intent with regard to him. Thank you, Your Honors. You're quite welcome. Thanks to you. Mr. Bailey, you had some time and if not, we're going to give it to you anyway. Thank you. Justice, Mr. Schechner did a wonderful job in the brief model and I'd like to reiterate that and again just indicate to the court of the importance of jurors listening to improper statements like that. And a lot of the case law are going towards now that you no longer can take a juror for their saying that they can be fair and impartial and that's why in that case the court decided that it need to go further into eliciting such states to determine whether that particular juror or the panel would be prejudiced in this particular matter. Okay. Very well. Mr. Bailey, thanks to you. Thank you. So the court asked the government, why did it object to the Santiago hearing? I don't know. I don't know if the DOJ lawyers expected the judge to agree with them. There is a benefit to being in front of your judge. I don't know if my local prosecutors would have done this the same way. I just don't know. But when we had the pretrial hearing, the government said we'll show a conspiracy, we'll show their in furtherance. The judge said yes and that was the end of it. This court gets a lot of cases where it's sentencing, there's an objection made and then whatever. I mean you can only complain to the judge so often about your side. We filed the motion, he said no. We can't keep rehashing it over and over. We can't also try the government's case for it. The arguments sort of by the government and during the course of this trial will tell us what's wrong with it. So to do that from my end, I have to say, which I did say, it's not a conspiracy. These people aren't in this conspiracy. There are some other people in some other place. This statement is an in furtherance of the conspiracy generally and then I can go line by line. But as this court pointed out, that's the government's job. They're the proponent of the evidence. My position is there is no conspiracy and even if there is, you can't show the second part of 801 D2E, right? The statement has to be in furtherance of the conspiracy. The government has provided this court with the exhibits. Send your law clerks off to start listening to those tapes. They are voluminous. The discovery in this case was into the terabytes and what's going to happen with your clerks and the judges. We spent a lot of time with it before today, I can assure you. Yes, and it's just too much and you just want to quit, which is what the jury did. It's just too much. The gangster disciples are bad. These guys are a member of this bad group. Fine. There's one phone call that's from some guy in Indiana talking about robbing a Harley Davidson motorcycle shop. I think he's on the phone with Frank Smith, right? What does that have to do with this case? But it seems bad, right? And that's the prejudicial part of that. They could have narrowly tailored this, right? If the judge had said, fine, I'll conditionally admit it and the government had narrowly tailored it, done what they should have done, we wouldn't be here, right? But they didn't. And there's just too much of it. It's just too much. And the, what is it? I don't know how to say it, Giganti case. There has to be some limits to this. You can't just put in every statement from every gangster disciple. I mean, if there are no limits. Criminal cases are different than civil cases. We have the Sixth Amendment. We have the right to confront and cross-examine the people that are going to come in against us. Otherwise, we would just put in lab reports or autopsies with nobody having to come in to testify to them. There is this exception or non-hearsay portion of the federal rules. And that's really nice, but it doesn't get around the Sixth Amendment. And so when you're going to stack all of these up, it violates our right to confront and cross-examine all of these witnesses against us when the government hasn't shown there's a conspiracy and that the statement is inferred. Okay. Thanks to you and your colleagues as well. Ms. Lee, we renew our thanks to you and the Justice Department. We will take the four consolidated appeals under advisement. Thank you.